**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                        :
ELIZABETH ZARTIN,            :
                                          : Civil Action No. 11-6929 (WJM)
Plaintiff,                :
                                          :
v.                                        : **O P I N I O N**
                                        :
DR. RAVI BALIGA, et al.,    :
                                        :
Defendants.             :
                                        :
_____

**APPEARANCES:**

**ELIZABETH T. ZARTIN**, Plaintiff pro se
Greystone Hospital
59 Koch Ave., Wing-D-2
Morris Plains, N.J. 07052

**MARTINI** District Judge

     Plaintiff, Elizabeth Zartin ("Plaintiff"), currently confined at Greystone Park Psychiatric Hospital in Morris Plains, New Jersey, at the time he submitted this complaint for filing, seeks to bring this action in forma pauperis.  Based on her affidavit of indigence, the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915 and order the Clerk of the Court to file the complaint.

     At this time, the Court must review the complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary

relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the complaint should proceed in part.

## I. BACKGROUND

Plaintiff brings this civil action, pursuant to 42 U.S.C. § 1983, against Defendants Dr. Ravi Baliga, Dr. Carolyn Farrales, Dr. Luna Harris, Ms. Flora Adedeji, Ms. Laura Euro, Governor Chris Christie, Ms. Janet Monroe and Ms. Tionka Atkins. The following factual allegations are taken from the complaint, and are accepted as true for the purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

Plaintiff is currently involuntarily committed for treatment pursuant to State v. Krol, 68 N.J. 236 (1975), after being found not guilty by reason of insanity in New Jersey Superior Court. It appears that Plaintiff was attacked by her roommate at Greystone Psychiatric Hospital, Ms. Tionka Atkins, on November 6, 2011. Plaintiff alleges that Ms. Atkins caused her physical harm by pulling her hair, hitting Plaintiff in the face, knocking Plaintiff down and kicking her in the side. Plaintiff alleges that Defendants Dr. Ravi Baliga, Dr. Carolyn Farrales, Dr. Luna Harris, Ms. Flora Adedeji and Ms. Laura Euro knew about Ms. Atkins' behavior problems and they should have transferred her to a more restrictive environment. About a month prior to Ms. Atkins' attack upon Plaintiff, Plaintiff had informed Defendants Baliga, Farrales,

Harris, Adedeji and Euro that she felt threatened by Ms. Atkins because Ms. Atkins had just threatened to kill Plaintiff. These defendants called an immediate treatment team meeting to discuss the issue and concluded that Plaintiff was not in any imminent danger from Ms. Atkins and the two would still room together. Plaintiff alleges that Defendants were aware that Ms. Atkins had previously attacked other patients and staff.

With regard to Defendants Christie and Monroe, Plaintiff alleges that these defendants have violated her right to access to the courts by not providing the patients at Greystone proper access to law books and paralegal assistance.

Plaintiff seeks monetary damages and injunctive relief.

## II.  DISCUSSION

### A. Legal Standard

### 1. Standards for a Sua Sponte Dismissal

The Prison Litigation Reform Act, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B). This

3

action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding as an indigent.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2).  Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203, 210

(3d Cir. 2009)(citing Iqbal, 129 S.Ct. at 1948).

The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. See Iqbal, 129 S.Ct. at 1949-50. See also Twombly, 505 U.S. at 555, & n. 3; Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). "A complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).

## 2.  Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250,

1255-56 (3d Cir. 1994); <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011).[1]

## B.  Analysis

### 1.  Failure to Protect

It appears that Plaintiff is alleging that Defendants Baliga, Farrales, Harris, Adedeji and Euro violated her Fourteenth Amendment right not to be deprived of liberty without due process when they acted with willful disregard for her safety.

"Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." <u>Foucha v. Louisiana</u>, 504 U.S. 71, 79, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (citing <u>Jones v. United States</u>, 463 U.S. 354, 368, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983); <u>Jackson v. Indiana</u>, 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972)). <u>See also</u> <u>Youngberg v. Romeo</u>, 457 U.S. 307, 324, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).

In <u>Youngberg v. Romeo</u>, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Supreme Court evaluated the substantive Fourteenth Amendment liberty interests retained by civilly-committed mental patients. The Court held that involuntarily-committed persons retain substantive liberty

---

[1] With regard to Defendant Atkins, Plaintiff has not alleged that Ms. Atkins is a state actor or that she somehow violated Plaintiff's constitutional rights.  As such, all claims against this defendant will be dismissed.

interests in adequate food, shelter, clothing, and medical care, Youngberg, 457 U.S. at 315, as well as in safety, freedom of movement, minimally adequate or reasonable training to ensure safety, and freedom from undue restraint, id. at 317-19.

These interests, however, are not absolute. Youngberg, 457 U.S. at 319-20. "In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." Id. at 320 (quoting Poe v. Ullman, 367 U.S. 497, 542, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting)). In seeking this balance, a court must weigh "the individual's interest in liberty against the State's asserted reasons for restraining individual liberty." Id. In Youngberg, balancing the interests of the State against the rights of involuntarily committed persons to reasonable conditions of safety and freedom from unreasonable restraints, the Court adopted the standard advocated by a concurring judge, below, that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." 487 U.S. at 321 (quoting 644 F.2d 147, 178 (3d Cir. 1980) (Seitz, C.J., concurring)). Thus, even when treatment decisions violate a protected liberty interest, such decisions made by a qualified

professional are presumptively valid;

> liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment. In an action for damages against a professional in his individual capacity, however, the professional will not be liable if he was unable to satisfy his normal professional standards because of budgetary constraints; in such a situation, good-faith immunity would bar liability.

457 U.S. at 323 (footnote omitted).

The claim against these defendants, all of whom are described as mental health professionals, is based upon their failure to take any action to protect Plaintiff against threats made by another patient with a history of violent behavior. Plaintiff has alleged sufficient facts to allow this claim to proceed at this time.

## 2.  Access to the Courts

Plaintiff further alleges that Defendants Governor Christie and Monroe violated her right to access to the courts by not providing the patients at Greystone proper access to law books and paralegal assistance.

The right of access to the courts derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[2]   The right of access to the

---

[2] The right of access to the courts is an aspect of the First Amendment right to petition. McDonald v. Smith, 472 U.S. 479, 482, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985); Bill Johnson's Rests. v. NLRB, 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). Also, "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and

courts requires that "adequate, effective, and meaningful" access be provided to inmates wishing to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).  Prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  Id. at 825.

Bounds held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  But the right of access to the courts is not unlimited.  "The tools [that Bounds ] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

Moreover, a prisoner alleging a violation of the right of access must show that prison officials caused previous or imminent

---

to seek redress for violations of their constitutional rights."  Procunier v. Martinez, 416 U.S. 396, 419, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413–14, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).

"actual injury" by hindering efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55; Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

Plaintiff fails to allege any actual injury due to the alleged denial of access to the courts.  She does not allege that she was unable to file this or any other complaint in the courts.  She also does not allege that any of her court cases were dismissed because she did not have timely access to the courts.  She only alleges generally that patients do not have access to adequate law books and paralegals.  She has not provided any facts as to how this has affected her ability to pursue any legal claims or any actual injury that has occurred.  Thus, the allegations in the Complaint are too conclusory to show a denial of court access sufficient to rise to the level of a constitutional deprivation under the Iqbal pleading standard.  This denial of access to the courts claim will be dismissed for failure to state a claim.

**C. Competency Inquiry**

As stated above, Plaintiff is currently confined at the Greystone Park Psychiatric Hospital after being found not guilty by reason of insanity, which places her mental competency and capacity to represent herself in this action plainly at issue. Therefore, pursuant to <u>Powell v. Symons</u>, --- F.3d ----, 2012 WL 1066740 (3d Cir. Mar. 30, 2012), this Court finds that a competency inquiry is justified under Fed.R.Civ.P. 17(c) to determine whether a representative should be appointed to protect Plaintiff who is unrepresented in this action. To this end, given the not-guilty-by-reason-of-insanity finding in state court and Plaintiff's commitment to Greystone Park Psychiatric Hospital, legal counsel will be appointed to represent Plaintiff in the competency inquiry under Rule 17(c). <u>See also</u> 28 U.S.C. § 1915(e)(1), <u>Tabron v. Grace</u>, 6 F.3d 147 (3d Cir. 1993).

**III. CONCLUSION**

For the reasons stated above, Plaintiff's due process claim will be permitted to proceed. Her claim for denial of access to the courts will be dismissed without prejudice. Plaintiff may seek to file an amended complaint to correct the deficiencies, and to allege sufficient facts to demonstrate the plausibility of these claims, as outlined in <u>Iqbal</u>, and in accordance with this Opinion.

Any motion to amend must adhere to the court rules.[3]  Further, given the possibility that Plaintiff may be incompetent or incapable of litigating this action without a duly appointed representative under Rule 17(c), legal counsel will be appointed to represent Plaintiff in a competency inquiry, pursuant to 28 U.S.C. § 1915(e)(1) and Fed.R.Civ.P. 17(c).  An appropriate order follows.

Dated: 5/29/12

                           s/William J. Martini
                        _____
                        WILLIAM J. Martini
                        United States District Judge

---

[3] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.

12